The next case on our calendar is Leanna Mercedes v. New York City Department of Education. Could you pour some more water? Yeah, thanks. I can't reach it. Thank you. Thanks. Good morning. Excuse me. May it please the court. My name is Stuart Carlin. I represent the appellant Leanna Mercedes in this Title VII case. Lift up the mic a bit. You're very tall. Thank you. Okay. Thank you. In this Title VII case, it's respectfully submitted to this Court that the lower court erred, didn't construe the facts most favorably to the plaintiff in this case, and there was actually quite a bit of evidence that puts almost, really puts the entire case in factual dispute. This basically started when my client, who was an assistant principal at a school, she received a satisfactory rating in February of 2012. Mr. Polanco comes in and only had two months to observe. There's plenty of evidence that Mr. Polanco disliked your client and took actions against your client because of his dislike. What is the evidence of gender-based discrimination against your client? There is evidence that Polanco made gender-based remarks elsewhere, but what is the evidence of gender-based discrimination against your client on the basis of which your client then complained and then was retaliated against? Well, the basis was is that this whole thing started when she received a developing rating and the other two APs did not receive a developing rating, and he conceded that in there, even though I didn't have enough time, paraphrasing, to evaluate you, I'm going to still give you a developing rating and recommend your discontinuance. So then what happened after that? She felt that it was discriminatory. She went ahead and filed an OEO complaint in good faith in late July of that year. What was the basis of that complaint, though? It was based on gender and it was based on a statement was made. What was the evidence? I know it's not before us because we count backwards only to the termination, but what led her to believe that she was discriminated against because of her gender? Because there were two comparative APs that were males at the time. And they got Ss. Either satisfactories or they weren't rated at all. And he was there the same amount of time. Everybody was there together. The basic claim is that other APs who were male were treated differently in the rating system at the time. Right. And that Mr. Polanco did make some extraneous but sexist comments. Right. It wasn't really the sexist comments. It was comments, I think, pertaining to national origin. But that started the ball rolling. She went to OEO, which she's supposed to do in July. The superintendent stepped in and said, you know, I am going to overrule the principal at that point. And then the ball basically started rolling. It's all outlined in the brief. After she filed the internal complaint, she tried to get transferred. He blocked the transfer. Then you have the physical threat, an actual physical threat against my client by the principal, Mr. Polanco, which she documented at the time. She filed the police report. And she also confirmed it in an e-mail, which also went to the OEO office. So you could see the animus already soon after she filed her first complaint. In fact, the CSA director, who is a representative in the union, said he's never seen such a toxic situation. Thereafter, after blocking her initial transfer, she gets falsely accused of corporal punishment because she allegedly assigned four students to do cafeteria work. I produced what she disputed. A couple of things about that. It was not in her evaluation in the summer before her OEO complaint. So you would think it would be in her evaluation. The principal has two days to report a corporal punishment issue. And I produced the declaration from one of the students who said it did not take place. All of these students were my friends. The only detention we all got, the only punishment we all got was detention. And none of us were interviewed by the principal. And the principal is the one who conducted the investigation. So that's a declaration that is in the record. And that's at 334, 335 in the record. So the conduct continues, okay? After that, in October, once again, a transfer was attempted and was blocked again by the assistant, excuse me, by Mr. Polanco. Then the next incident that occurred was with respect to the observations in December of that year. And that's in dispute because she believed that she had until January. As the other APs, you had mentioned your difference in treatment. This is another difference in treatment. I produced two declarations from teachers who submitted observations in January, at the same time my client did, in connection with the other APs. That's at page 348 and 349. That's the declaration of Hathaway. And Rooney, page 354, page 355. She then files a second complaint. And the DOE superintendent comes in, suggests that she try to transfer her out. She tried, but because of the developing rating, she couldn't go anywhere. At that particular ---- It makes the fact that when a new female assistant principal came to the school, she was treated like the other two male assistant principals. Okay. Also by Polanco. Well, what happened was, Your Honor, she got an unsatisfactory rating at the end of that year, which was again overturned by the superintendent. So this is the second time it was overturned. And then what happens is she gets placed in an office, placed in an office, sitting on a small chair like a kindergarten chair. She couldn't talk to anybody. She couldn't do anything in connection with her duties as an assistant principal. And she sat there for six months until the superintendent finally intervened and said ---- Now, this doesn't answer the question that the presiding judge, which says someone else was hired afterwards who was female and was treated like the males. So, you know, the suggestion is there's no question that Polanco mistreated your client. There's no question about that. And there's no question he lied about it. And there's no question that the administration didn't look. The question is, was it based on gender? And the fact that after the fact somebody of the same gender is treated equally, we have held in some cases it's not enough because after the fact, to avoid the suit, you're likely to do that. But it is relevant. So the answer is yes. He did bring in a female. This was after the third complaint of discrimination of gender and retaliation. She had filed the third complaint in the summer. The superintendent convinced her to withdraw it after it had been pending for a little while. She withdrew it. She then comes in, and in November of that year, we're talking about November of 2013, what they call an F-status AP is hired, which is basically a temporary employee, part-time employee. She's an AP. She gets an office. She gets assigned duties. And my client sits there in an office. And, by the way, this is supported by declarations from Hughes, Gonzalez, Delgado, Prifty, Hathaway, Sikak, and Rooney, basically 329, 330, 332, 33, 342, 43, 45, 46, 48, 49, 51, 52, and 54, 55. In addition to the office, she didn't have a computer. She didn't have a telephone. She had no access to data in order for her to, like, look at students and figure out what's going on. She was completely deprived of that. Okay? One last question before your time expires, and it looks like it already has. Speak about the temporal connection to her complaints with her termination. It's a year and a half. We have usually viewed this in days of — in periods of days or weeks or months even. But a year and a half seems attenuated to me. Tell me why it's not. Well, it wasn't attenuated. First, with all due respect, Your Honor, she filed a complaint. In the summer of 2011, she went ahead and filed another complaint in December. She filed another complaint in the summer of 2013. And the conduct never stopped. The retaliation never stopped. If you look at the arrest decision — You're saying that if we look at her last complaint — Right. — the time is short. That is correct. I mean, just — Well, that was July 2013. That's what you're focusing on. Right. And then she was terminated in January 2015. Yes. So that's a year and a half. But what happened, Your Honor, is, okay, she files the complaint. She withdraws it. But she does file it in 2013. She gets sent to Siberia, for lack of a better term. And the superintendent intervenes in January or February. Then there's an investigation starting in May of 2014 regarding the cell phone incident, again, which is well documented here. My client refutes the allegations that occurred. And I got the student to submit a declaration saying, this never happened. And she was pressured to lie by the assistant principal when she wanted to retract her story. The principal said, no, if you try to retract your story, if you try to — and this is in May of 2014 — you'll never graduate. That's in the declaration. And I believe that is in page 336 to 338. There's another declaration in 339, 340, when the student came — right after the incident — came in to apologize for her conduct. So that happened in May of 2014. Now, you ask the question, it took — it took OSI, the investigating unit, months, months to investigate that charge, this particular charge. And at the end of the day, it took 4, 5, 6 months, and then she was terminated in January of 2015. Over that charge, over the cafeteria charge, and over some performance issues. And by the way, she got another year rating in 2014 during that summer, which was also overruled by the superintendent. It wasn't until they substantiated the cell phone issue that she was terminated. And I would respectfully submit, if you look at the Herrera decision and you look at the Mazzaro decision, it treats school cases somewhat differently because there's a calendar. And those two cases in Herrera, there was over a 2-year period of time. Mazzaro is somewhat similar because it started in 13 and the last acts occurred in 16. And so I would respectfully submit you look at those cases. In this particular case, the continuous conduct, the continuous retaliation never stopped. It's not like there was a retaliation complaint filed, 2 years went by, nothing happened, and then she was terminated. Two or three years went by and it continued and continued, continued, continued. She's filing complaints. Thank you. We'll hear from the city. May it please the Court, my name is Scott Shore. I'm here on behalf of the Department of Education. This Court should affirm the dismissal of the Title VII claims because the plaintiff presented insufficient evidence of gender bias, retaliation, or hostile work environment to defeat summary judgment. My adversary has mixed all three of these issues together, so let me try to disaggregate them a bit and explain why the district court was right to dismiss each claim. With respect to plaintiff's claim for discriminatory termination, the plaintiff has failed to meet her burden on pretext. There were several legitimate incidents that led to the discontinuance of her probationary position as assistant principal. Much of this conduct was admitted to. She admitted that she was late with her observations. She admitted, this is on page 148 of the record, she admitted to OAR, one of the investigatory bodies, that she had allowed the students to work in the cafeteria to avoid suspension. That was in direct contravention of what Principal Polanco had told the APs. But there is evidence, isn't there, that males were treated differently for analogous discrimination actions? Not so much, Your Honor. I mean, that's the question. I would like to point out that on pages 274 to 275 of the record, this is the plaintiff's 56.1 counterstatement, it is admitted that at the end of the first semester that Principal Polanco was principal. He tried to replace both a male AP named Irizarry and Plaintiff, the female AP at the time. The male APs never racked up the series of misconduct that the plaintiff did, and Principal Polanco said during his deposition, this is uncontested, this is on page 180 of the record, that he had during his tenure recommended the discontinuance of both male and female probationers. What was Principal Polanco's role in the termination decision? I'm sorry, Your Honor? What was Principal Polanco's role in the termination decision? He recommended her termination. Then it had to go through the superintendent. Then it had to go through a chancellor's committee. During the chancellor's committee hearing, the plaintiff brought in a witness. This was a witness that OSI had not interviewed regarding the cell phone incident. The committee viewed that witness's, the plaintiff's own witness, as testimony about that incident as confirming that it happened. That incident, by the way, is based not only on an interview with KT, the student whose declaration my adversary just referred to, but also based on interviews of 11 students in that class. And when did those declarations that your adversary referred to come in? Those declarations came in only after we moved for summary judgment. They were produced for the purpose of opposing summary judgment. And, as I mentioned before, Ms. Mercedes admitted that she had allowed the students to do the cafeteria work. She admitted that her observations were late. She does not challenge the second two U ratings as pretextual. But the opposing counsel told us that the U ratings, or at least some of them, were overruled by the superintendent. Is that correct? I don't recall ever seeing that in the record or in my adversary's brief. He'll correct me if I'm wrong, I'm sure. But the evidence we cited in our brief is that she challenged all of these ratings. The two U ratings were ultimately upheld by the chancellor's committee. The D rating was ultimately rejected after Ms. Mercedes was terminated. But at the time she was terminated, that had been challenged and at the first administrative level had been upheld. Plus, as Judge Pooler mentioned a few minutes ago, Ms. Mercedes was replaced with a female AP, which goes some distance toward showing that this was not a gender-based determination. He just didn't like her. He didn't like her. That's clear. But there's no basis that he didn't like her because she was a woman. Well, he didn't like her and he lied, and there is evidence that the administration didn't really do much evidence, much looking into the fact that he lied so that, you know, in terms of what they did, there is plenty of a question of whether this was based on gender is the thing that one keeps coming back to. I'm not sure why Your Honor is saying that it's clear he lied. With respect to the administrative reviews of Ms. Mercedes' complaints, her complaints about her year rating, her complaints of discrimination, there's no argument that the reviews were anything but fair and impartial. I do want to talk about new evidence of pretext that my adversary tried to raise or did raise for the first time on reply. He cited these four cases, three of them brought by his own clients, which he doesn't mention, and he says that they were all brought by women and they all allege similar discrimination involving Polanco. That is not accurate. And he says that they're all open. Only one of them, the Alejandro case, and by the way he's mentioning these to show that Polanco was biased against women, only one of them, the Alejandro case, federal case, alleged gender discrimination. And my adversary doesn't mention the Southern District dismissed that claim on summary judgment for failure to establish a prima facie case. This court dismissed the appeal because of a failure to perfect. And he also tries to bring in his own description of a video in which Principal Polanco had appeared. He says it was a sex video that was demeaning to women. That's not in the record. The page he cites for that, A181, says nothing about this being a sex video or being anti-woman. I wanted to address next the retaliatory termination claim. Judge Pooler, as you mentioned, there is a big time lag here. This is not like Massaro where a school three-month summer vacation can explain the entire gap. I know there's a lot of background evidence that the plaintiff would like this court to consider. Counsel, in response to my question, says it was a continuing course of conduct. That's right, Your Honor. My adversary has been challenged several times now by the district court and by us in our brief to show, to meet his burden with respect to but-for causation, and he has never even done it. Well, but if there is a continuous course of conduct, the point at which then the retaliation occurs, you don't look to the first one, you look to the last. So that, you know, you have to be sensible in seeing what is going on and whether from it one can infer causation. So, you know. Absolutely, Your Honor. That is somewhere in between what the two of you are saying. That sounds a lot like the Herrera case where there was, where the issue was different because it was whether the complaint presented a valid claim of discrimination. But the professor there had unique power over the plaintiff's career prospects, had made the threat to ruin those career prospects, and then his career prospects were promptly ruined. And this Court, applying something akin to but-for causation, said it's really bizarre to think that any of these things would have happened to this poor plaintiff if his professor had not been following through on his threat. But here we have, and I'm sorry to repeat myself, several incidents where Principal Polanco's attitudes about or alleged retaliation against the plaintiff had nothing to do with the misconduct that she was found to have committed, like the OSI investigation finding that she did in fact have a tug-of-war with this student, confirmed by independent witnesses. So, and with respect to but-for causation, there's no argument or evidence that other assistant principals or teachers who had been involved in similar conduct would not have been discontinued without filing complaints. With respect to the hostile work environment, I know we haven't talked about it very much, but the gender-based is time-barred, and there's no evidence that anything that happened to her within the 300-day period was gender-based. As Your Honor mentioned, the female assistant principal had an office, had the office equipment. What about national origin discrimination? There's no claim for national origin discrimination. I thought there was some claim that he said something disparaging about Dominican women. Yes. That was the only complaint about Principal Polanco that Mercedes made that was ever upheld, that he made this comment about Dominican women and their shoes. But there is no claim here for national origin discrimination, and my adversary just admitted that he is not using that incident as evidence of anti-female bias. Finally, with respect to hostile work environment, there's no evidence here that she was subjected to the kind of ridicule and bias that this Court has deemed essential, really, to a hostile work environment claim. Thank you. Thank you, counsel. Mr. Carlin, you have two minutes for rebuttal. Just a couple of quick points. My adversary says that these things are not in dispute. A lot of these material facts are, in fact, in dispute. The cafeteria incident is in dispute. Declaration from a superintendent. My client testified it never happened, period. And Polanco actually was investigated for allegedly not reporting the incident the way he was supposed to report the incident. And you have the circumstances of him not putting it in the evaluation, even though it was in May, and only brought it up after, after the initial OEO complaint was filed internally. You have the recommendation. Discontinue her, overruled. Then there was a mention about the observations. The observations were not late. I submitted two declarations from two different teachers, said they submitted it at the same time as my client, to the other APs. And there's no evidence that the APs were ever disciplined on that. And my client said that's another factual dispute. With respect to the cell phone incident, we have a declaration. My client's obviously disputing it. But we have a declaration. What else can I do? But I didn't get a declaration from the person who was the alleged, alleged person that was the target when she was restrained, saying basically the principal told her to lie, not to change her story, unless, if she does, she'll never graduate. You know, when you look at the facts in this particular case, I mean, it's clear to me that a reasonable jury can conclude at the very minimum, given the fact there was an OEO complaint, three OEO complaints filed, that there was a continuous conduct in connection with retaliation. In addition, there's a mention with respect to the grievances. What my adversary doesn't let you know is that ultimately the decision goes back to the superintendent when you're a probationary employee or designee of the chancellor. So it's not an independent process where there's some sort of an arbitration. The bottom line with respect to the grievances is it's not a, you know, something that's independent. It is provided for in the union contract, but ultimately the decision rests with the chancellor. And one last thing. The evaluations were all contested. It's all laid out in the brief. The three reasons for the termination are all contested. This Honorable Court has said it's obvious that there was some sort of aminus against my client. Once you get to that point, once you get to that point, it should go to the jury, particularly on the issue of retaliation. But the animus has to be based on a prohibited ground. Yes. But it's a factual dispute for the jury to decide, Your Honor, if it's retaliation. And there's plenty of evidence of retaliation, which I just outlined. She was sitting in a kindergarten chair for six months. I mean, that is outrageous. All right. Thank you. Thank you both. We'll reserve decision. The next cases on our calendar are on submission, so I'll ask the clerk to adjourn court. Court is adjourned.